### EX PARTE J. A. TITTLE.

*No. 1269.    Decided May 5th, 1897.*

**Habeas Corpus—Excessive Bail—Confinement Endangering Life.**

On a habeas corpus hearing, where the applicant's bond had been fixed at $500, in a case of incest, and it appeared that he was unable to give said bond; that the incest case had been continued by the State for the testimony of the alleged paramour, who was herself indicted for said offense and could not be compelled to testify in

the case; and where it further appeared, that relator's life would be injured by further confinement. Held: The $500 bail was excessive, and bail is fixed at $100; and, if relator is unable to give said bail, by the time fixed for the trial of the incest case, that he then be released from custody upon his personal recognizance.

APPEAL from the Criminal District Court of Dallas. Tried below before Hon. CHARLES F. CLINT.

Appeal from a judgment and order, in a habeas corpus proceeding, fixing relator's bond at $500, and remanding him to custody of the sheriff until the same was given.

The case is stated in the opinion.

*Miller & Williams*, for relator.

*Mann Trice*, Assistant Attorney-General, for respondent.

DAVIDSON, JUDGE.—Relator was arrested on a charge of incest about the middle of November, 1896, and confined in the county jail of Dallas County. About the middle of March, 1897, he applied for and obtained a writ of habeas corpus for the purpose of reducing his bail, which had been fixed at $750. On the trial of the writ the court reduced the bail to $500, and seems to have placed the defendant on the county poor farm. On April 9th he applied a second time for a writ of habeas corpus, alleging that further confinement would endanger his life, and that he was unable to give any bond whatever. He further alleges that since the first habeas corpus trial his physical condition has daily grown worse, and that he was so weak from said sickness "that he was almost unable to move," and that further confinement would endanger his life; that on the 5th of April, 1897, his case was postponed until June 11, 1897; and that this order of the court was made because the State applied for and obtained a continuance on account of the absence of Rena Ford, his stepdaughter, with whom he is alleged to have committed incest. He further states that this witness is absent without his act or consent, and without the act of his friends, and that said witness has abandoned her home, as he is informed, and her whereabouts is unknown to him, his friends, relatives and acquaintances; and these facts are shown by attached affidavits of various parties, used as evidence on the trial. It is also shown that Rena Ford was indicted for the same offense on the 6th of February, 1897, and is a fugitive from justice; that the State has been unable to secure her attendance on the court, both as a witness and as a defendant. The evidence clearly shows that relator is afflicted with several diseases, and that he is daily getting worse in his physical condition since his incarceration, rendering it probable that continuous confinement may result in his death. It is also shown, without contradiction, that he is unable to give the bond as fixed by the court, and is unable also to give any bond, or, at most, only a small one. If it be true, as alleged by the State, in its second application for a continuance for the witness, Rena Ford, that

there was no other witness present at that term of the court by whom the facts could be established showing an incestuous intercourse between herself and defendant, it would seem to be a reasonable conclusion that without her testimony the State would be unable to make out a case against relator. If this be true, then, in view of the further fact that she being indicted for the same offense, and no agreement being had from her by the State to testify in the incest case against relator, her absence would not be cause for a continuance. The State would have no power to compel her to testify in the case; and the fact that she has avoided all process of the court, both as witness and defendant, and being a fugitive from justice, it would hardly seem probable that the State could have made the showing required by the statute, or could prove said facts by her. The Assistant County Attorney testified that Rena Ford had been indicted so that the State might be able to bring her from Mississippi on a requisition, he being informed that she was in that State. This would seem to exclude the idea that she had agreed to testify against her codefendant. It is not shown anywhere in the record that if the witness was present she would testify for the State. There must not only be some reasonable expectancy of securing the attendance of the witness, but it must further appear that if she was present she could be placed on the witness stand, and required to testify. Taking into consideration these facts, in connection with the testimony that relator's life would be injured by further confinement, it occurs to us that this case should not have been postponed. It was plainly apparent from the testimony that the $500 bond required of the relator could not be given, and, under the circumstances, was excessive, especially when, in view of the record, a conviction could not be had without the testimony of the incestuous paramour. We therefore fix the bail at $100, and if relator is unable to give this bond before or on the 11th of June, 1897, and if the State is not then ready for trial, it is further ordered that relator be then released from custody upon his personal recognizance, and it is accordingly so ordered.

*Bail Reduced.*